

2007 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

4-16-2007

# Carr v. Gillis Assoc Ind

Precedential or Non-Precedential: Non-Precedential

Docket No. 06-2489

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2007

Recommended Citation

"Carr v. Gillis Assoc Ind" (2007). *2007 Decisions.* Paper 1291.
http://digitalcommons.law.villanova.edu/thirdcircuit_2007/1291

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2007 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 06-2489
_____

BRIAN CARR; MARILYN CARR,

Appellants

v.

GILLIS ASSOCIATED INDUSTRIES, INC.,
A Division of Leggett & Platt, Inc.;
JARKE CORPORATION
_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. No. 04-cv-05345)
District Judge:  Honorable Thomas N. O'Neill, Jr.
_____

Submitted Under Third Circuit LAR 34.1(a)
March 26, 2007

Before:  FISHER, JORDAN and ROTH, *Circuit Judges*.

(Filed:  April 16, 2007)
_____

OPINION OF THE COURT
_____

FISHER, *Circuit Judge*.

In this personal injury action, plaintiff Brian Carr appeals from a grant of summary

judgment in favor of defendant Gillis Associated Industries, Inc. ("Gillis").  Because

there is no genuine issue of material fact in this case and Gillis is entitled to judgment as a matter of law, we will affirm.

## I.

We write only for the parties and our recitation of the facts will therefore be brief. Brian Carr was injured on January 16, 2003, at his place of employment while using a rolling steel ladder designed, manufactured and sold by Gillis. At the time of his injury, Carr had parked the ladder in front of a shelf in order to retrieve stock. When parked, the ladder rests on two back wheels and two stationary supporting front legs. Carr was standing on the ladder reaching toward the shelf for a part when the ladder began to roll away, causing Carr to fall and allegedly injure his back and right knee. An investigation conducted by Carr's employer, Welex, Inc., concluded that the accident was the result of poor maintenance of the ladder. Specifically, the rubber crutch tips of the two stationary supporting legs of the ladder had worn down so that they no longer provided the traction necessary to hold the ladder in place when parked.

Carr's original expert report alleged that the ladder was defective because its design allowed the metal of the tubular support legs to cut through the rubber crutch tips attached to the ends of the legs. It stated that if metal discs had been welded to the bottom of the metal feet, or if the rubber crutch tips had been reinforced with steel, wearing down of the rubber would have been prevented. The report also alleged that the warning label attached to the ladder was defective in that it inadequately warned the user to inspect the condition of the crutch tips and failed to specify replacement of the rubber

2

tips when they were worn down. The report proposed that the label should instruct the user to turn the ladder on its side every week to inspect the rubber feet for wear.

In response, Gillis's expert produced a report indicating that the ladder, as originally manufactured and sold, did in fact include metal washer inserts designed to protect the rubber tips. According to the report, the rubber tips on the ladder at the time of the accident were replacement parts of unknown origin that were not authorized for use by the manufacturer. In addition, the expert report took issue with Carr's expert's proposed warning label, stating that the original warnings on the ladder were concise, easy to understand, and in full compliance with applicable safety standards. Gillis therefore moved for summary judgment on the basis that the subject ladder was, as a matter of law, not defective at the time of sale.

In his papers opposing the motion for summary judgment, Carr attached an "addendum" report in which his expert stated that the opinions contained in his original report remained the same. That addendum, however, also responded to the undisputed fact that the rubber tips on the ladder were replacement parts. It asserted that Gillis did not provide adequate warnings regarding the necessity to use steel reinforced crutch tips as replacement parts. The District Court found that the change in theory was untimely, made two months after Carr's original expert report was due, and that Carr's expert should have known that the rubber tips on the ladder were replacements at the time of his original report. It therefore disregarded the addendum and only considered the original expert report in its summary judgment analysis.

3

As neither party disputed that the accident was caused by the worn down rubber crutch tips or that these tips were unauthorized replacements parts, the District Court found that there were no genuine issues as to any material fact. In addition, the District Court found that the ladder was sold with the type of rubber tips conceded by Carr's original expert report to be proper. Applying Pennsylvania law, it concluded therefore that Gillis was entitled to summary judgment under Rule 56 of the Federal Rules of Civil Procedure. This timely appeal followed.

## II.

The District Court had diversity jurisdiction under 28 U.S.C. § 1332. A grant of summary judgment is a final order for purposes of appeal and we therefore have jurisdiction under 28 U.S.C. § 1291. *Selkridge v. United of Omaha Life Ins. Co.*, 360 F.3d 155, 160 (3d Cir. 2004). Our review of an order granting summary judgment is plenary, *Moore v. City of Philadelphia*, 461 F.3d 331, 340 (3d Cir. 2006), applying the same test employed by the District Court under Federal Rule of Civil Procedure 56(c). Summary judgment is appropriate when, after considering the record as a whole, it appears that "there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). In examining the record, we draw all reasonable inferences in favor of the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). We review decisions of the district courts pertaining to the admission of expert testimony for abuse of discretion. *Knight v. Otis Elevator Co.*, 596 F.2d 84, 87 (3d Cir. 1979).

4

III.

Under Pennsylvania law, to maintain a claim for product liability under a theory of negligence or strict liability, a plaintiff must show, inter alia, that the product at issue was defective and that the defect was the proximate cause of the injuries complained of. *See Wilson v. Vermont Castings, Inc.*, 170 F.3d 391, 396 (3d Cir. 1999); *Spino v. John S. Tilley Ladder Co.*, 696 A.2d 1169 (Pa. 1997). A product is defective if it lacks any element necessary to make it safe for its intended use or has any feature which renders it unsafe for the intended use when it leaves the control of the manufacturer or seller. *See Azzarello v. Black Bros. Co.*, 391 A.2d 1020, 1027 (Pa. 1978). The word "defective" is a term of art and "[i]t is a judicial function to decide whether, under the plaintiff's averment of the facts, recovery would be justified . . . ." *Id.* at 1026. In other words, should the court determine that a defect does not exist or "that the defect was not a legal cause of the injury, then the defendant is entitled to judgment as a matter of law. *Surace v. Caterpillar, Inc.*, 111 F.3d 1039, 1053 (1997).

In this case, the District Court correctly concluded that Carr had not demonstrated that Gillis was liable for any alleged design defect in the ladder. Carr's own expert opined that the accident occurred because the metal feet of the ladder had cut into and worn through the rubber crutch tips of the ladder, resulting in a loss of the traction required to prevent the ladder from slipping. He further opined that a metal disc the diameter of the metal feet, either welded to the bottom of the legs or inserted into the rubber tips, would have prevented the wearing down of the rubber. Apparently

5

unbeknownst to Carr's expert, this was precisely the design of the original rubber crutch tips of the ladder. In other words, the proposed "alternative" remedial design was the very same design utilized by Gillis. In addition, it is undisputed that the defectively designed replacement tips were not provided or authorized by Gillis. This fact is fatal to Carr's claim for defective design. A plaintiff bringing a strict liability claim for such a defect must show not only that the alleged defect was the cause of his injury but that the defect existed in the product at the time it left the defendant's control. *See Berkebile v. Brantly Helicopter Corp.*, 337 A.2d 893, 898 (Pa. 1975). A failure to establish either element bars recovery as a matter of law. *Phillips v. A-Best Prods. Co.*, 665 A.2d 1167, 1171 (Pa. 1995). Carr did not demonstrate that the ladder left Gillis's control with defectively designed rubber crutch tips. To the contrary, testimony of his own expert established that the ladder left Gillis's control with properly designed rubber crutch tips. Consequently, Gillis is entitled to judgment as a matter of law on Carr's defective design claim.

The District Court also correctly concluded that Gillis was entitled to summary judgment on Carr's claim for defective warning. "In strict liability, an inadequate warning is a species of product defect, and hence is properly decided initially by the court as a matter of law." *Metzgar v. Playskool Inc.*, 30 F.3d 459, 465 (3d Cir. 1994) (citing *Mackowick v. Westinghouse Electric Corp.*, 575 A.2d 100, 102 (1990)). In this case, Carr put forward two distinct theories of failure to warn liability, one before Gillis submitted his expert report and one after. The first theory, asserting that the warning label should

6

have directed the user to inspect the rubber crutch tips weekly for wear, was correctly dismissed. Since the design of the original rubber crutch tips provided by Gillis made them resistant to wear, as indicated by Carr's own expert, there was no need to warn an ordinary user to check the rubber tips weekly for wear. The label actually provided, warning the user to "make sure the rubber tips are on legs and that tips rest on floor when you are on the ladder," was therefore adequate.

Carr's second theory of failure to warn liability, put forward in his addendum after discovering that the ladder had replacement rubber crutch tips on it at the time of the accident, was that Gillis should have but did not provide adequate warnings regarding the use of steel reinforced crutch tips as replacement parts. The District Court rejected the addendum and its new theory as untimely, and rightfully so. District Courts have broad discretion to disallow the addition of new theories of liability at the eleventh hour. *See*, *e.g.*, *Speziale v. Bethlehem Area Sch. Dist.*, 266 F. Supp. 2d 366, 371 n.3 (E.D. Pa. 2003) ("Plaintiff's counsel cannot reasonably expect to amend the complaint after the close of discovery merely by raising new arguments in the responsive papers" to a motion for summary judgment.); *Ota P'ship v. Forcenergy, Inc.*, 237 F. Supp. 2d 558, 561 n.3 (E.D. Pa. 2002) (holding that a new claim that was first raised in opposition to a motion for summary judgment was "too late"). We agree with the District Court that Carr's expert was or should have been aware of the undisputed fact that the rubber tips on the ladder at the time of the accident were not the original tips at the time of manufacture. As such, it

7

was not an abuse of discretion for the District Court to reject the addendum report as untimely filed.[1]

IV.

There are no genuine issues of material fact left to be resolved in this case and the undisputed facts make clear that the ladder at issue was not defective at the time it was manufactured and sold by the defendant Gillis. Accordingly, Gillis is entitled to judgment as a matter of law and we will affirm the judgment of the District Court.

---

[1]The District Court suggested that Carr's expert had lost "much, if not all, of his credibility," (App. 4), by putting forward a new theory of liability after the original one had been debunked. Although we agree with Carr that the issue of credibility is an issue for the jury to consider, the District Court's conclusion as to the expert's lack of credibility was not the basis for its decision to disregard the addendum. The record clearly indicates that the District Court rejected the addendum as untimely.